*Decisions will be entered under Rule 50.*

ROBERT DEUTSCH AND ROSANNE DEUTSCH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80650.    Filed April 23, 1962.

*Harry Golter, Esq.*, for the petitioners.
*Theodore W. Hirsh, Esq.*, for the respondent.

FAY, *Judge:* The Commissioner determined deficiencies in the petitioners' income taxes, as follows:

| Year | Amount |
|------|--------|
| 1951 | $5, 136. 50 |
| 1952 | 3, 893. 92 |
| 1953 | 10, 157. 23 |
| 1954 | 9, 962. 10 |
| 1955 | 3, 453. 19 |

The only issues for decision are:

(1) Whether certain payments made by a corporation were distributions to petitioner Robert Deutsch;

(2) Whether the corporation had earnings and profits at least equal to the amount of these payments at the time they were made; and

(3) Whether the assessments for the years 1951 and 1952 were barred by the statute of limitations.

FINDINGS OF FACT.

Some of the facts are stipulated and are found as stipulated.

The petitioners are husband and wife. They filed their joint Federal income tax returns for the taxable years involved with the district director of internal revenue at Chicago, Illinois. Their return for 1951 showed gross income of $10,140 and their return for 1952 showed gross income of $9,030. Agreements to extend the period during which the taxes for the various years involved might be assessed were entered into between the petitioners and respondent, as follows:

| Year involved | Date to which period extended | Date of agreement |
|---|---|---|
| 1951 | June 30, 1958 | Mar. 15, 1957 |
| 1951 | June 30, 1959 | Feb. 4, 1958 |
| 1952 | June 30, 1959 | Feb. 4, 1958 |
| 1953 | June 30, 1958 | Mar. 12, 1957 |
| 1953 | June 30, 1959 | Feb. 4, 1958 |
| 1954 | June 30, 1959 | Feb. 4, 1958 |

Dorothy Flicek Industries, Inc., hereinafter referred to as the corporation, was incorporated in the State of Illinois in 1947. It was originally organized by Nathan and Dorothy Dahlman to operate a business that they had been conducting in the form of a partnership. The business was transferred to the corporation for 350 shares of $100-par-value common stock, with Nathan and Dorothy each taking 175 shares.

On March 22, 1950, Nathan died, leaving his stock in the corporation to Dorothy, who also was the administratrix of his estate.

Prior to September 1, 1950, Robert Deutsch, hereinafter referred to as the petitioner, was an employee of the corporation and had no interest in it as a shareholder or otherwise. On or about September 1, 1950, the petitioner entered into an agreement with Dorothy under which he would acquire the business from her.

This agreement provided that the petitioner would purchase 35 shares of the common stock of the corporation for $10,000 at the time of the signing of the agreement. The petitioner also agreed to purchase or cause the corporation to redeem 14 shares of common stock for $4,200 on March 1, 1951, and on the first day of each third succeeding month until 21 such sales or redemptions had been accomplished. Dorothy, in turn, agreed to sell or deliver for redemption 14 shares of the corporation's stock on each of the designated dates for $4,200. The petitioner also agreed to purchase or to cause the corporation to redeem the last remaining 7 of the original shares for $3,600 on September 1, 1956. Dorothy agreed to sell those shares to the peti-

tioner or deliver them to the corporation for redemption at the time and price stated.

The petitioner further agreed to cause the corporation, in the manner to be explained later, to issue an additional 300 shares of common stock to Dorothy.

All of the common stock of the corporation held by Dorothy at the time of the sales agreement, as well as the 300 new shares to be issued, was to be transferred by her to Arthur F. McCormick, who was to hold title to the shares as trustee. Upon payment of the various installments provided for in the contract, he was to surrender the appropriate number of shares to the corporation or to the petitioner. After all the terms of the agreement were complied with, he was to deliver the 300 new shares of stock to the petitioner.

Under the provisions of the trust agreement entered into at the same time as the sales agreement, McCormick, as trustee, was to vote all the stock in accordance with directions with respect to the provisions of the sales agreement. This provision was limited by the fact that Dorothy was to be a director until the agreement was executed and also by a provision that the trustee was not to approve the issuance of any new stock beyond the 300 shares provided for in the agreement. The petitioner was also to receive all the dividends on the stock so long as he was not in default.

The 300 new shares of stock referred to above were issued December 11, 1950, and were conveyed to the trustee who held them until the petitioner had complied with all the other terms of the agreement.

Dorothy did transfer her 350 shares of the corporation's stock to the trustee on or about September 1, 1950. At that time 35 shares of this stock were transferred to the petitioner and he paid Dorothy $10,000 for them. Thereafter payments were made under the agreement by the corporation, as follows:

| Date | Amount | Date | Amount | Date | Amount |
| --- | --- | --- | --- | --- | --- |
| Mar. 9, 1951 | $4,200 | Aug. 22, 1952 | $2,200 | Mar. 24, 1954 | $4,200 |
| June 1, 1951 | 4,200 | Nov. 29, 1952 | 4,200 | Aug. 25, 1954 | 4,200 |
| Sept. 15, 1951 | 3,000 | Mar. 14, 1953 | 4,200 | Sept. 17, 1954 | 4,200 |
| Sept. 28, 1951 | 1,200 | Apr. 7, 1953 | 4,200 | Nov. 30, 1954 | 4,200 |
| Dec. 1, 1951 | 4,200 | Aug. 14, 1953 | 4,200 | May 31, 1955 | 4,200 |
| Mar. 25, 1952 | 4,200 | Oct. 6, 1953 | 4,200 | Sept. 19, 1955 | 4,200 |
| Aug. 15, 1952 | 2,000 | Dec. 28, 1953 | 4,200 | Dec. 8, 1955 | 4,200 |

With each payment of $4,200 the trustee endorsed and delivered 14 shares of the stock to the corporation. On or about October 18, 1956, the final payment of $3,600 under the agreement was made. Under the terms of the agreement the last remaining 7 of the original 350 shares of stock were to have been surrendered by the trustee upon the making of this payment. However, a dispute arose between Dorothy and the petitioner concerning Dorothy's rights arising from late pay-

ments to her under the agreement and some other matters. As a result, the delivery of these 7 shares of stock was delayed. This dispute was settled by a payment to Dorothy through the trustee of $3,600. Upon the settlement of this dispute, the remaining 7 shares, as well as the 300 shares which were issued pursuant to the sales agreement, were delivered by the trustee to the corporation. On or about December 1, 1956, an instrument releasing all claims under the sales agreement was signed by Dorothy, the trustee, the corporation, and the petitioner.

In entering into the agreement to purchase the stock of the corporation, the petitioner was acting for himself and not as an agent of the corporation.

During the period in which payments were being made under the stock purchase agreement, the balance of the earnings and profits of the corporation was as shown below. The term "Payment to trustee" signifies a payment made by the corporation to the trustee pursuant to the stock purchase agreement.

| Date | Explanation | Dr. | Cr. | Balance |
|---|---|---|---|---|
| 9/ 1/1950 | Balance | | | $36,720.94 |
| Year ended 8/31/1951: | | | | |
| 3/ 9/1951 | "Payment to trustee" | $4,200.00 | | |
| 6/ 1/1951 | "Payment to trustee" | 4,200.00 | | |
| 8/31/1951 | Net loss for year ended 8/31/1951 | 5,922.39 | | |
| | Refund on prior year's taxes arising from carryback of 8/31/1951 loss | | [1]$1,468.65 | |
| Year ended 5/31/1952 [Change in taxable year]: | | | | |
| 9/15/1951 | "Payment to trustee" | 3,000.00 | | |
| 9/28/1951 | "Payment to trustee" | 1,200.00 | | |
| 12/ 1/1951 | "Payment to trustee" | 4,200.00 | | |
| 3/25/1952 | "Payment to trustee" | 4,200.00 | | |
| 5/31/1952 | Net income for year ended 5/31/1952 | | 18,533.13 | |
| | Federal income tax liability | 3,751.70 | | |
| Year ended 5/31/1953: | | | | |
| 8/15/1952 | "Payment to trustee" | 2,000.00 | | |
| 8/22/1952 | "Payment to trustee" | 2,200.00 | | |
| 11/29/1952 | "Payment to trustee" | 4,200.00 | | |
| 3/14/1953 | "Payment to trustee" | 4,200.00 | | |
| 4/ 7/1953 | "Payment to trustee" | 4,200.00 | | |
| 5/31/1953 | Net income for year ended 5/31/1953 | | 31,879.53 | |
| | Federal income tax liability | 7,221.75 | | |
| Year ended 5/31/1954: | | | | |
| 8/14/1953 | "Payment to trustee" | 4,200.00 | | |
| 10/ 6/1953 | "Payment to trustee" | 4,200.00 | | |
| 12/28/1953 | "Payment to trustee" | 4,200.00 | | |
| 3/24/1954 | "Payment to trustee" | 4,200.00 | | |
| 5/31/1954 | Net income for year ended 5/31/1954 | | 81,303.83 | |
| | Federal income tax liability (per return) | 49,719.78 | | |

[1] Adjustment to the earnings and profits of the corporation, the effect of which was disputed by the parties at the time of trial.

| Date | Explanation | Adjustment | | Balance |
| | | Dr. | Cr. | |

Year ended 5/31/1955:

| Date | Explanation | Dr. | Cr. |
|------|-------------|-----|-----|
| 8/25/1954 | "Payment to trustee"_ | $4, 200. 00 | |
| 9/17/1954 | "Payment to trustee"_ | 4, 200. 00 | |
| 10/30/1954 | "Payment to trustee"_ | 4, 200. 00 | |
| 5/31/1955 | "Payment to trustee"_ | 4, 200. 00 | |
| 5/31/1955 | Net loss for year ended 5/31/1955 (per return)_____ | 54, 165. 52 | |
| | Revenue agent's adjustments: | | |
| | Excessive Reserve for Bad Debts_____ | | $2, 540. 29 |
| | Sales_____ | | 13, 424. 06 |
| | Refund of prior year's taxes arising from carryback of 5/31/1955 loss: | | |
| | f.y.e. 5/31/1953 (paid on 9/25/1956)_____ | | [2] 7, 221. 75 |
| | f.y.e. 5/31/1954 (paid on 9/25/1956)_____ | | [2] 25, 957. 82 |
| | Deficiency for year ended 5/31/1954 (reducing tentative refund) (paid 9/16/1958 through 10/7/1958)_____ | [2] 11, 109. 44 | |

Year ended 5/31/1956:

| Date | Explanation | Dr. | Cr. |
|------|-------------|-----|-----|
| 9/19/1955 | "Payment to trustee"_ | 4, 200. 00 | |
| 12/ 8/1955 | "Payment to trustee"_ | 4, 200. 00 | |
| 3/22/1956 | "Payment to trustee"_ | 4, 200. 00 | |
| 5/31/1956 | Net loss for year ended 5/31/1956_____ | 2, 291. 51 | |
| | Nondeductible contributions_____ | 93. 00 | |
| | Refund of prior year's taxes arising from carryback of 5/31/1956 loss f.y.e. 5/31/1954_____ | | [2] 1, 594. 64 |

² See footnote 1.

The amount of $30,000 was transferred from the surplus account to the capital account at the time the 300 new shares of common stock were issued. At all times at which payments were made by the corporation under the stock purchase agreement it had accumulated earnings and profits or earnings and profits for the year in an amount sufficient to cover the payments made.

OPINION.

The first question is whether the payments made by the corporation under the stock purchase agreement were dividends to the petitioner under the provisions of section 115 (a) of the Internal Revenue Code of 1939 or section 316 (a) of the Internal Revenue Code of 1954. Both of these sections provide that a dividend means a distribution by a corporation to its shareholders out of accumulated earnings and profits or earnings and profits for the current year. The respondent contends that the payments made to the petitioner by the corporation were

made either in redemption of stock already owned by the petitioner or made in discharge of an obligation of the petitioner under the stock purchase agreement. The petitioner, on the other hand, contends that the payments made by the corporation were made to discharge the corporate obligation to purchase its stock from Dorothy. We agree with the respondent.

At the time Dorothy became obligated to transfer her stock to the trustee, the petitioner became the beneficial owner of it. At that time the petitioner acquired the voting rights and management, subject only to his continued performance of the terms of the agreement. Further, he was entitled to all dividends declared so long as he was not in default. Finally, the choice was his whether to take title to the stock or have it transferred to the corporation. Dorothy retained only an interest in the shares as a security device and certain other power to assure proper performance of the agreement. *Frithiof T. Christensen*, 33 T.C. 500 (1959).

However, even if the petitioner did not become the owner of the stock at the time it was to be transferred to the trustee, the net effect of the transaction was a purchase of all of the corporation's stock by the petitioner. The contract was between the petitioner and Dorothy; the corporation was not a party. Prior to the sales agreement, Dorothy owned legally or equitably the entire common stock of the corporation which amounted to 350 shares. Under the terms of the agreement, after all the provisions of the agreement had been complied with, the petitioner would own all of the common stock, which would amount to at least 335 shares. Although much of Dorothy's stock could have been redeemed under the agreement, 300 new shares of stock were to be issued by the corporation which the trustee was to turn over to the petitioner at the termination of the agreement.

For these reasons, the sales transaction constituted a purchase of the stock by the petitioner and the payments made by the corporation were therefore made in payment of the purchase price of the stock purchased by him. Since this is so, the payments were distributions to the petitioner. *Ruphane B. Iverson*, 29 B.T.A. 863 (1934); *Wall v. United States*, 164 F. 2d 462 (C.A. 4, 1947); and *Louis H. Zipp*, 28 T.C. 314 (1957), affd. 259 F. 2d 119 (C.A. 6, 1958), certiorari denied 359 U.S. 934 (1959).

The petitioner has also contended that in purchasing the corporation's stock he should be considered as acting as the agent of the corporation and thus not chargeable with the receipt of a dividend. A result of this nature was reached in *Fox v. Harrison*, 145 F. 2d 521 (C.A. 7, 1944), wherein the Court of Appeals found as a fact that the taxpayer acted as the agent of the corporation. We have, however, found as a fact that the petitioner was not acting as the agent of the corporation in acquiring its stock. Although there is

evidence in the record that the corporation would benefit by reason of the petitioner's acquisition of control, it is clear that the primary purpose of the agreement covering the sale of the stock was to transfer ownership of the corporation to the petitioner and not to sell stock to the corporation.

The second question is whether the corporation had sufficient earnings and profits to cover the payments made by the corporation under the agreement. Most of the items concerning earnings and profits are stipulated. The parties have indicated that only three types of items are in dispute.

The first item is the $30,000 removed from the surplus account of the corporation and added to the capital account upon the issuance of the 300 new shares of common stock pursuant to the agreement. Although the stipulation indicates that this item is in dispute, the petitioner does not contend on brief that this transfer would reduce the amount of earnings and profits of the corporation. Clearly it would not. *John K. Beretta*, 1 T.C. 86 (1942), affd. 141 F. 2d 452 (C.A. 5, 1944).

The second item is a deficiency in income taxes which was determined against the corporation for the year 1954 but not paid until 1958. A deficiency in income taxes, even though not paid, is properly taken into account in determining earnings and profits in the year for which the deficiency is determined. *Estate of Esther M. Stein*, 25 T.C. 940, 965 (1956), affirmed per curiam 250 F. 2d 798 (C.A. 2, 1958).

The third type of item is the increase in earnings and profits brought about by refunds of Federal income taxes which arose by reason of a net operating loss carryback. There appears to be no case directly in point on the question of when this type of refund is to be considered in determining earnings and profits. Income tax liability is taken into account in the year to which the tax relates in the case of an accrual basis taxpayer, even where the parties are not aware of the correct tax liability. *Estate of Esther M. Stein, supra; Rose* v. *Dobbs*, 36 F. 2d 464 (C.A. 5, 1929). In the year in which the net operating loss occurs, the right to a refund for prior years is as fixed and its amount as determinable as in the case of the obligation to pay income taxes and their amount. Therefore, we hold that in the case of an accrual basis taxpayer an income tax refund arising from a net operating loss carryback should be taken into account in determining earnings and profits as of the close of the taxable year in which the net operating loss occurred.

When these adjustments are taken into account, the corporation had earnings and profits in excess of the payments made to the trustee at the time that each of the payments was made. These payments, therefore, were dividends to the petitioner.

The third question is whether the statute of limitations had run on the assessment of the tax for 1951 and 1952 at the time the taxpayer

and the respondent agreed to extend the period. These agreements were made within 5 years of the date of filing of the returns for the years in issue. They would therefore be timely under section 275(c) of the Internal Revenue Code of 1939 if gross income was understated by 25 percent. These returns showed gross income of $10,140 for 1951 and $9,030 for 1952. We have found that the petitioner had additional income of $16,800 for 1951 and $12,600 for 1952. Thus, section 275(c) is applicable and the agreements extending the period for assessment were timely.

*Decision will be entered for the respondent.*