MARVIN E. SINGLETON, JR., AND GERTRUDE R. SINGLETON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 573-73.    Filed May 29, 1975.

*Anderson Wallace, Jr.,* for the petitioners.
*D. Derrell Davis,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1965 and 1966 in the amounts of $8,039.70 and $4,767.83, respectively. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the

following: To what extent were distributions received by petitioners with respect to their stock in Capital Southwest Corp. in 1965 and 1966 from the current and accumulated earnings and profits of that corporation so as to constitute taxable dividends to petitioners.

All of the facts have been stipulated and are found accordingly.

Petitioners husband and wife resided in Waxahachie, Tex., at the time their petition in this case was filed. They filed joint Federal income tax returns for the calendar years 1965 and 1966 with the Internal Revenue Service Southwest Service Center, Austin, Tex.

During the calendar years 1965 and 1966 petitioners were stockholders of Capital Southwest Corp. (Capital Southwest). As of January 1, 1965, Marvin E. Singleton, Jr., owned approximately 28,000 shares of Capital Southwest which was incorporated in April 1961. During its fiscal years ending March 31, 1965, 1966, and 1967, Capital Southwest declared dividends and made distributions to Marvin E. Singleton, Jr., as follows:

| Date | Nature of distribution | Received |
|---|---|---|
| 3/31/65 | 1,855 shares, Capital Wire stock at $10.125 | $18,781.88 |
| 11/1/65 | Cash | 2,100.00 |
| | Total, 1965 | 20,881.88 |
| 5/2/66 | Cash | 2,000.00 |
| 7/20/66 | 1,200 shares, DPA, Inc., stock at $9.375 | 11,250.00 |
| 11/1/66 | Cash | 2,000.00 |
| | Total, 1966 | 15,250.00 |

The value of these distributions are as set forth above.

During its fiscal years ending March 31, 1964, 1965, 1966, and 1967, Capital Southwest was the parent corporation of an affiliated group of corporations. This affiliated group included Capital Wire & Cable Corp. (Capital Wire), Southwest Leasing Corp. (Southwest), and other subsidiaries. Capital Southwest and its subsidiaries filed consolidated Federal income tax returns for the fiscal years ending March 31, 1964, 1965, 1966, and 1967. Capital Wire and Southwest were not members of the affiliated group after March 31, 1965.

On March 4, 1965, Capital Southwest sent a letter to Capital Wire, which stated as follows:

The consolidated Federal income tax return of Capital Southwest Corporation and subsidiaries for the year ended March 31, 1964, included the taxable income of Capital Wire & Cable Corporation for the period from June 1,

1963, to March 31, 1964. It is intended that for the year ended March 31, 1965, a consolidated Federal income tax return also will be filed which will include the taxable income of Capital Wire & Cable Corporation for the year. Capital Wire & Cable Corporation had income in each of the stated periods which would have been subject to Federal income taxes if separate returns were filed; however, such income is off-set by losses, principally those of Capital Southwest Corporation, in the consolidated returns.

Because of the minority interest stock ownership in your corporation, it is deemed advisable for you to pay out as a dividend by March 31, 1965, an amount approximately equivalent to the Federal income tax that would be paid by you for both periods on a separate return basis, rather than paying the full amount of the tax savings up to Capital Southwest Corporation to compensate for the use of its losses in the consolidated return.

While it is not in any way anticipated that such shall be the case, should the Internal Revenue Service determine, and be upheld by the Courts, that for some reason the consolidation was not proper, or for any reason assert and successfully sustain deficiencies in income tax against Capital Wire & Cable Corporation for either of the stated periods attributable to the foregoing circumstances, then Capital Southwest Corporation herewith agrees to reimburse Capital Wire & Cable Corporation for any deficiencies in Federal income tax it is required to pay for either of these periods; however, such reimbursement shall be limited to the total amount of the dividend to be paid.

This letter was signed on behalf of Capital Southwest by M. E. Singleton, president.

The minutes of the monthly meeting of the board of directors of Capital Wire, held on March 5, 1965, state in part as follows:

There was then a discussion of the tax consequences of the filing of a consolidated Federal Income Tax return with the company's parent, Capital Southwest Corporation. It was pointed out that the consolidation of Capital Wire's tax return with that of Capital Southwest Corporation would completely shield Capital Wire's income from taxes during the fiscal year ending March 31, 1965, and that a similar consolidation in the preceding fiscal year had also eliminated any tax liability on the part of Capital Wire & Cable Corporation. The tax saving effected in this manner amounted to $237,800 in the preceding year and an estimated $625,000 in the current fiscal year—a total of $862,800. Mr. Rains then advised the Directors of the company that although Capital Southwest Corporation was responsible for this elimination of Capital Wire's tax liability, it was his opinion that any distribution of the amount of the tax saving should not be paid directly to Capital Southwest Corporation, but should be paid to all shareholders in dividend form and in such amount as the Board of Directors might establish.

There followed a discussion of the amount of the dividend which the company should declare and it was generally agreed that this amount should bear some relation to the $862,800 tax saving accomplished by the filing of a consolidated return, with some additional amount in recognition of the company's record earnings during the current year. It was pointed out that a special dividend of $1.95 per share would amount to a total of $975,000, which,

combined with the previously declared semi-annual dividend of $0.05 per share, would total $1,000,000. Upon motion duly made, seconded, and unanimously carried, it was:

RESOLVED that there is declared from the earned surplus of the corporation a special dividend of $1.95 per share on the common stock of the corporation, payable on the 25th day of March, 1965, to holders of such stock at the close of business on the 19th day of March, 1965, and the treasurer is directed and authorized to pay same on the date specified.

On March 31, 1965, pursuant to the agreement as shown by the letter of March 4, 1965, from Capital Southwest to Capital Wire and the minutes of the meeting of the board of directors of Capital Wire of March 5, 1965, Capital Wire made a cash distribution of $1 million, of which Capital Southwest received $803,750. In its fiscal year ending March 31, 1965, Capital Southwest received payments characterized at the time in its consolidated income tax return as originally filed as dividends from subsidiaries in the total amount of $863,843.75, comprised of the following:

| Subsidiary | Amount |
|---|---|
| Capital Wire & Cable Corp. | $803,750.00 |
| Southwest Leasing Corp. | 40,000.00 |
| Other subsidiaries | 20,093.75 |
| | 863,843.75 |

The consolidated returns as originally filed for the consolidated group for their fiscal years ended March 31, 1964 and 1965, showed no consolidated taxable income and no consolidated tax liability. The income tax liability of the consolidated group was finally determined and settled by the parties in Capital Southwest Corp., docket No. 4643-67, on January 5, 1972. As a result of the examination and settlement, taxable income of the consolidated group was increased for the fiscal years ending March 31, 1964, 1965, 1966, and 1967.

The following shows the allocation of consolidated income before net operating loss deduction and consolidated tax liability after investment credit as finally determined by the settlement of January 5, 1972, among the members of the consolidated group for the fiscal years 1964 and 1965:

INCOME OF CORPORATIONS HAVING TAXABLE INCOME

FYE Mar. 31, 1964

| Name of corporation | Taxable income | |
|---|---|---|
| Capital Southwest | $163,290.27 | (26.44%) |
| Capital Wire | 427,407.63 | (69.21%) |
| Southwest | 26,854.56 | (4.55%) |

*FYE Mar. 31, 1965*

| Name of corporation | Taxable income | |
|---|---|---|
| Capital Southwest _____ | $209,712.11 | (12.40%) |
| Capital Wire _____ | 1,453,846.21 | (85.96%) |
| Southwest_____ | 20,082.02 | (1.19%) |
| Alabama _____ | 7,562.77 | (.45%) |

ALLOCATION OF CONSOLIDATED TAX LIABILITY

*FYE Mar. 31, 1964*

| Name of corporation | | |
|---|---|---|
| Capital Southwest _____ | 75,265.10 | (26.44%) |
| Capital Wire _____ | 197,015.80 | (69.21%) |
| Southwest_____ | 12,382.88 | (4.35%) |

*FYE Mar. 31, 1965*

| Name of corporation | | |
|---|---|---|
| Capital Southwest _____ | 80,515.09 | (12.40%) |
| Capital Wire _____ | 558,151.42 | (85.96%) |
| Southwest_____ | 7,726.85 | (1.19%) |
| Alabama _____ | 2,921.92 | (.45%) |

As of March 31, 1964, Capital Southwest had a deficit balance in accumulated earnings and profits of $133,688.70.

On September 25, 1964, Capital Wire made a payment to Capital Southwest in the amount of $192,483.61. This amount was subsequently repaid to Capital Wire on March 12, 1965. This amount is the amount of income tax Capital Wire computed it would have had to pay if it filed a separate return for the fiscal year ending March 31, 1964, rather than joining in the consolidated return with Capital Southwest.

Petitioners were advised by Capital Southwest that the distributions to them in March 1965 and May and July 1966 were nontaxable and therefore did not report them on their Federal income tax returns for the calendar years 1965 and 1966. Respondent in his notice of deficiency increased petitioners' income as reported by $15,535.80 and $9,624.48, respectively, with the explanation that these amounts represented the portions of the distributions to them from Capital Southwest in 1965 and 1966 taxable to them as dividends which had not been reported on their income tax returns.

Petitioners take the position that they correctly reported the dividend income they received from Capital Southwest in 1965 and 1966 since in their view Capital Southwest had no current or accumulated earnings and profits from which the distributions to them, other than those reported on their return or conceded by

them in this case to be taxable, could be paid and therefore these distributions were not dividends under the definition contained in section 316, I.R.C. 1954.[1] Petitioners recognize that, even though a distribution by one member of an affiliated group filing consolidated returns is not includable in the taxable income of the corporation receiving the distribution in computing the consolidated income, intercompany dividends are part of the earnings and profits of the recipient corporation for the purposes of determining whether a distribution by that corporation to its shareholders is a dividend within the definition of section 316.

Petitioners, however, take the position that the distributions to Capital Southwest in the amount of $803,750 by Capital Wire and in the amount of $40,000 by Southwest in the fiscal year ended March 31, 1965, were in substance as distinguished from form, payments by these subsidiaries to their parent corporation for their allocable portion of the consolidated income tax of the affiliated group for the fiscal years 1964 and 1965. Petitioners contend that for this reason the distributions constituted dividends to Capital Southwest from its subsidiaries only to the extent that the amounts distributed are in excess of the distributing corporation's allocable portion of the consolidated income tax as finally determined on January 5, 1972, relying on *Beneficial Corp.*, 18 T.C. 396 (1952), affd. per curiam 202 F. 2d 150 (3d Cir. 1953); and *Dynamics Corp. of America v. United States*, 392 F. 2d 241 (Ct.Cl. 1968). Each of these cases involved an amount paid by a subsidiary corporation to its parent in the year following the close of a year in which it, as a member of an affiliated group, filed a consolidated return with its parent as its part of the consolidated income tax. We held in the *Beneficial Corp.* case that to the extent the payment exceeded the portion of the consolidated tax liability properly allocable to the income of the subsidiary making the payment included in the consolidated return, the payment constituted a dividend to the parent to the extent of the subsidiary's current or accumulated earnings and profits. The holding of the Court of Claims in the *Dynamics Corp.* case is to the same effect. In the *Beneficial Corp.* case and apparently in the *Dynamics Corp.* case the payment was treated by the parent on its books as being with respect to Federal tax.

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Petitioners argue that although the amounts distributed by Capital Wire and Southwest to Capital Southwest were characterized as dividends on the consolidated return as originally filed, the reason for this characterization was that there was no consolidated tax liability as shown on the consolidated tax return as originally filed with the result that there was at the time of the distribution no allocable portion of the consolidated tax for any subsidiary to pay. Petitioners state that since the entire distribution exceeded the amount of each subsidiary's allocable portion of tax as shown on the consolidated return as originally filed, the entire payment was treated as a dividend. Petitioners contend that the substance of the transactions here is that the payments were made by the subsidiaries to the parent to compensate the parent for use of the parent's losses which caused the subsidiaries not to pay tax which they would have paid if they had filed separate returns. Petitioners cite and rely on a number of cases in which it has been held that an amount paid by a subsidiary to a parent designated as a dividend was in substance not a dividend, such as *Steel Improvement & Forge Co. v. Commissioner*, 314 F. 2d 96 (6th Cir. 1963), revg. 36 T.C. 265 (1961), in which a payment designated a dividend was held to be in substance a payment of part of a purchase price of stock, and *Frelbro Corp. v. Commissioner*, 315 F. 2d 784 (2d Cir. 1963), revg. 36 T.C. 864 (1961), in which it was held that a payment designated a dividend was in fact merely a bookkeeping entry of exchanges between two related corporations.

Petitioners point out that the consolidated income tax as finally determined was properly allocated to the various subsidiaries in accordance with the provisions of section 1552(a)(1) and that this proper allocation is stipulated. Petitioners further point out that it has been held that in computing corporate earnings and profits, Federal taxes as finally determined, even though the final determination is made many years subsequent to the year to which the tax is applicable and is contested throughout the intervening years, must be accrued and deducted for the year to which applicable. *Stern Bros. & Co.*, 16 T.C. 295, 323 (1951); *Estate of Esther M. Stein*, 25 T.C. 940, 965 (1956), affd. per curiam 250 F. 2d 798 (2d Cir. 1958); *Robert Deutsch*, 38 T.C. 118, 124 (1962). Petitioners conclude, therefore, that since any income tax determined against Capital Southwest or any of its subsidiaries in 1972 applicable to the fiscal years ended

March 31, 1964 and 1965, would, in computing earnings and profits of the parent and each subsidiary, be accrued as of March 31, 1964, and March 31, 1965, any payments made by the subsidiary to the parent to compensate the parent for the saving in Federal income tax resulting to the subsidiary because of the use of the parent's losses should be considered as a payment by the subsidiary for its allocable portion of the consolidated income tax for the year to which the tax is applicable regardless of when the final settlement of the tax liability occurred.

Respondent does not deny that when a deficiency or overpayment of income tax of an accrual basis corporation is finally determined, the amount is accrued as of the year to which it applies for the purpose of computing earnings and profits. Respondent takes the simple position here that the amounts distributed to Capital Southwest by Capital Wire and by Southwest in the fiscal year ended March 31, 1965, were distributed as dividends since the consolidated income as then reported on the consolidated return showed no tax liability. Furthermore, respondent takes a contrary position to that taken by petitioners with respect to the implication of the agreement between Capital Southwest and Capital Wire. Respondent states that this agreement, although showing that the payment was to "compensate" Capital Southwest "for the purchase and use of its losses," was for the payment of a dividend and that the resolution adopted by Capital Wire was for the payment of a dividend.

In our view respondent's position is too simplistic. When a consolidated return is filed the tax is that of the consolidated group. Section 1552 [2] provides that when a consolidated return is filed

---

[2] SEC. 1552. EARNINGS AND PROFITS.

(a) GENERAL RULE.—Pursuant to regulations prescribed by the Secretary or his delegate the earnings and profits of each member of an affiliated group required to be included in a consolidated return for such group filed for a taxable year beginning after December 31, 1953, and ending after the date of enactment of this title, shall be determined by allocating the tax liability of the group for such year among the members of the group in accord with whichever of the following methods the group shall elect in its first consolidated return filed for such taxable year:

   (1) The tax liability shall be apportioned among the members of the group in accordance with the ratio which that portion of the consolidated taxable income attributable to each member of the group having taxable income bears to the consolidated taxable income.
   * * *
   (4) The tax liability of the group shall be allocated in accord with any other method selected by the group with the approval of the Secretary or his delegate.

(b) FAILURE TO ELECT.—If no election is made in such first return, the tax liability shall be allocated among the several members of the group pursuant to the method prescribed in subsection (a)(1).

"the earnings and profits of each member of an affiliated group * * * shall be determined by allocating the tax liability of the group for such year among the members of the group" by one of the methods there set forth. Respondent, in recognition of this provision, states that each Capital Wire and Southwest is entitled to accrue at the end of its fiscal years 1964 and 1965 its allocable portion of the consolidated Federal income tax as finally determined on January 5, 1972. Respondent contends, however, that the fact that this tax is accrued for the purpose of computing earnings and profits does not cause amounts initially paid as a "dividend" to compensate for the use by Capital Wire of Capital Southwest's losses with the resultant tax saving to Capital Wire to constitute a "constructive" tax payment by Capital Wire to Capital Southwest to the extent of Capital Wire's accrued taxes.

In the *Dynamics Corp.* case the Court referred to the payments by the subsidiary to the parent as "constructive tax payments." While it is not completely clear from the *Beneficial Corp.* and *Dynamics Corp.* cases, it appears that the reason that the payments in each of these cases by the subsidiary to the parent was in excess of the subsidiary's allocable portion of the tax was that the subsidiary made a payment to the parent on the basis of what its Federal income tax would have been had it filed a separate return rather than of its proper allocable portion of the consolidated tax liability. The facts here show that Capital Wire paid a "dividend" to its stockholders based primarily on what its Federal income tax would have been had it filed a separate return. That the intent of the payment by Capital Wire to Capital Southwest was a payment of Capital Wire's "constructive tax" is further shown by Capital Southwest's agreement to reimburse Capital Wire for any Federal income tax which might subsequently be determined against it. In our view the agreement between Capital Wire and Capital Southwest here is not substantially different from the agreement between the parent and subsidiary in the *Dynamics Corp.* case. In that case some consolidated liability was shown on the return whereas in the instant case none was shown. However, in both cases the payment by the subsidiary to the parent was for the "constructive tax" that the subsidiary would have owed had it filed a separate return. For the many reasons stated in the *Beneficial Corp.* and the *Dynamics Corp.* cases, to the extent that the payment exceeded Capital Wire's properly allocable portion of the consolidated tax as

finally determined, the payment is a dividend to Capital Southwest to the extent of Capital Wire's earnings and profits. However, with the substance of the transaction as clear as it is in this case, we would be ignoring substance for form were we to hold as respondent contends we should that the amount paid by Capital Wire to Capital Southwest was not its "constructive tax" and therefore a dividend to Capital Southwest only to the extent that it exceeded the portion of the consolidated tax properly allocable to Capital Wire.

Cases too numerous to require citation hold that the substance rather than the form of the transaction is controlling for the purposes of applying the Federal tax laws. Here the facts clearly show that the substance of the distributions by Capital Wire to Capital Southwest in the fiscal year ended March 31, 1965, was a "constructive tax" payment. We therefore conclude that this distribution is a dividend to Capital Southwest includable in its earnings and profits for the fiscal year 1965 only to the extent that it exceeded Capital Wire's allocable portion of the consolidated Federal income tax liability as finally determined for the fiscal years 1964 and 1965.

The record is devoid of information as to the facts surrounding Southwest's distribution to Capital Southwest in the fiscal year 1965. There is nothing to show whether the distribution was a routine dividend or had some relation to Southwest's tax savings from the filing of a consolidated return with Capital Southwest. We have no basis in the facts here to show that this distribution was other than a dividend. We therefore hold that the $40,000 distribution by Southwest to Capital Southwest in the fiscal year 1965 was a dividend includable in the earnings and profits of Capital Southwest in that fiscal year.

Reviewed by the Court.

*Decision will be entered under Rule 155.*

TANNENWALD, *J.,* dissenting: Every indicium of a "dividend," in the tax sense of that word, was present herein. That Capital Southwest undertook an obligation to reimburse Capital Wire for the latter's share of a liability that might later be found to exist would not, in the usual situation, justify an ex post facto offset to the amount of the distribution which should properly be treated

as a dividend. See *United States v. Lesoine*, 203 F.2d 123 (9th Cir. 1953); *Estate of Lloyd E. Crellin*, 17 T.C. 781 (1951), affd. 203 F.2d 812 (9th Cir. 1953). Compare *Likins-Foster Honolulu Corp. v. Commissioner*, 417 F.2d 285, 290-291 (10th Cir. 1969), affg. on this issue T.C. Memo. 1967-207 and T.C. Memo. 1966-273. Compare also sec. 1.301-1(g), Income Tax Regs., with sec. 1.461-1(a)(2), Income Tax Regs., and *F. & D. Rentals, Inc. v. Commissioner*, 365 F.2d 34, 41 (7th Cir. 1966), affg. 44 T.C. 335 (1965); *Columbus & Greenville Railway Co.*, 42 T.C. 834 (1964), affd. per curiam 358 F. 2d 294 (5th Cir. 1966).

But, it is not enough to determine that the distribution from Capital Wire to Capital Southwest was a dividend. The ultimate issue herein is the amount of Capital Southwest's earnings and profits. The resolution of this issue requires us to decide whether the promise of reimbursement by Capital Southwest should be equated with an assumption of direct liability for Capital Wire's share of the tax as finally determined against the consolidated group and, if so, whether the obligation should be considered a tax liability of Capital Southwest so as to fall within the ambit of the cases holding that contested tax liabilities are attributed in the case of an accrual basis taxpayer to the taxable year to which they relate for the purpose of computing earnings and profits. See *Estate of Esther M. Stein*, 25 T.C. 940, 965-966 (1956), affd. per curiam 250 F.2d 798 (2d Cir. 1958); *Stern Bros. & Co.*, 16 T.C. 295 (1951). In such event, there would be a corresponding reduction in earnings and profits having the effect of offsetting the dividend.

For my own part, I would stop short of holding that there was an assumption of liability herein. The letter agreement between Capital Wire and Capital Southwest constituted at most a promise by the latter to reimburse the former for an amount equal to Capital Wire's share of the consolidated tax liability as finally determined. Such a promise does not, in my opinion, constitute an assumption of liability sufficient to support a direct liability by Capital Southwest for the portion of the consolidated tax allocable to Capital Wire, separate and apart from the amount allocated to Capital Southwest by the provisions of the statute and the regulations. Sec. 1552; sec. 1.1552-1(b)(2), Income Tax Regs.

Thus, I would hold that Capital Southwest's obligation to Capital Wire was no different from any other business liability

and, since its amount was not determinable in the taxable year involved, it was not accruable in that year. To make a retroactive adjustment to earnings on the basis of the agreement between Capital Southwest and Capital Wire would be to confuse an obligation which is contingent on a tax liability with one which is a contingent tax liability and greatly extend the principle of *Stein* and *Stern Bros.*[1]

DAWSON and IRWIN, *JJ.,* agree with this dissent.

QUEALY, *J.,* dissenting: The amount in question was declared and paid out of earnings and profits as a dividend of $1.95 per share by the subsidiary to its parent corporation and minority stockholders. The opinion of the Court certainly does not suggest that the $1.95 dividend was anything but a dividend to the extent that it was paid to the minority stockholders. I find nothing in the statute or the respondent's regulations regarding the filing of consolidated returns which would warrant reclassifying the payment of $1.95 to the majority stockholder, after the fact, as anything else but a dividend.

DAWSON, RAUM, IRWIN, and HALL, *JJ.,* agree with this dissent.

---

[1] That principle has been said to "add to the complexity of this [earnings and profits] area, without making any offsetting contribution to rationality." Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 7-21 to 7-22 (3d ed. 1971).