**AMP INCORPORATED AND CONSOLIDATED SUBSIDIARIES,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 98–5083.**

United States Court of Appeals,
Federal Circuit.

Aug. 2, 1999.

---

Jeffrey M. O'Donnell, Baker & McKenzie, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Robert J. Cunningham and Karen A. Kuenster. Of counsel was John D. McDonald.

Kenneth W. Rosenberg, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and David English Carmack, Attorney.

Before CLEVENGER, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

ARCHER, Senior Circuit Judge.

## DECISION

AMP Incorporated and Consolidated Subsidiaries (AMP) appeals the summary judgment of the Court of Federal Claims in favor of the United States (the government). *See AMP Inc. and Consol. Subsidiaries v. United States*, 40 Fed.Cl. 172 (1998) (*AMP I*).[1] The court held that AMP is not entitled to a redetermination of the foreign tax credit claimed in its 1981 and 1982 tax returns for additional foreign taxes paid by its wholly-owned Brazilian subsidiary. Because AMP is entitled to a foreign tax credit redetermination for such additional payments, we reverse.

## BACKGROUND

AMP is a United States corporation which owned 100% of the stock of AMP do Brasil Conectores Eletricos E Eletronicos

---

1. The Court of Federal Claims entered its order granting summary judgment in favor of the government on December 31, 1997. On January 15, 1998, the court reissued its order for publication with minor revisions not affecting the substance of the opinion. On February 3, 1998, pursuant to the government's request for clarification, the court ordered certain changes made to the order.

Limitada (AMP Brasil), a Brazilian subsidiary. AMP Brasil manufactured and sold electrical connecting devices in Brazil. AMP Brasil's taxable years at issue here are the twelve-month periods ending January 2, 1982 (TYE 1982) and January 2, 1983 (TYE 1983). AMP was required to file Brazilian tax returns for these years in February 1983 and February 1984, respectively.

Under the Brazilian tax system, the Brazilian tax liability was payable in twelve monthly installments. Eleven of these installments were advance payments which commenced in March following the end of the tax year and which were equal to one-twelfth of the company's prior year tax liability. The final installment was paid with the return and reflected the balance of the tax liability shown on the return.

During the years at issue in this case, the Brazilian economy was operating under hyperinflationary conditions which decreased the purchasing power of the Brazilian cruzeiro. In November 1982, Brazil adopted Decree Law No. 1967, which established an indexing system for the payment of Brazilian income taxes. The index was based on the value of the Brazilian Readjustable National Treasury Bond (Obrigacoes Reajustaveis do Tesouro Nacional) (ORTN). The ORTN's nominal cruzeiro value was adjusted monthly as a function of the fluctuation in the purchasing power of the cruzeiro, in effect reflecting a devaluation of the cruzeiro resulting from inflation. Under Decree Law No. 1967, the ORTN index was used to calculate how many cruzeiros had to be paid to satisfy the Brazilian tax liability. AMP's tax payments were required to be paid in cruzeiros; tax payments were not made in ORTNs.

Decree Law No. 1967 was effective for AMP Brasil's tax years ending in January 1982 and January 1983. Under this law, AMP Brasil was required to state its tax liability on its returns in units of ORTNs. In order to determine its tax liability in

ORTNs, AMP Brasil converted its taxable income for each year from cruzeiros to units of ORTNs based on the cruzeiro-to-ORTN index for the month following the end of the taxable year, i.e., February 1982 for TYE 1982, and February 1983 for TYE 1983. The ORTN value of the Brazilian taxes due was calculated by multiplying this figure by the Brazilian corporate tax rate.

Advance tax payments were paid in cruzeiros based on the ORTN-to-cruzeiro index prevailing in the month of actual payment. To determine the final payment due with its return, AMP Brasil subtracted the advance payments, expressed in ORTNs, from the total ORTN tax liability. The ORTN value of the Brazilian tax amount remaining due was then converted to cruzeiros based on the ORTN-to-cruzeiro index for the month of payment.

By the time Decree Law No. 1967 was enacted in November 1982, AMP Brasil had already made nine advance payments for TYE 1982 in cruzeiros, as the ORTN index was not yet applicable. Due to the application of the ORTN index to these advance payments, AMP Brasil needed a significantly larger than anticipated amount of cruzeiros to satisfy its tax liability. In recognition of this type of burden, Brazil provided a transition rule. Under that rule, AMP Brasil was permitted to pay the remaining TYE 1982 tax liability in eleven installments from February 1983 to December 1983. Although AMP Brasil was allowed eleven additional months to pay its TYE 1982 tax liability, AMP Brasil paid its outstanding tax liability in three months—February, March, and April of 1983. For TYE 1983, AMP Brasil made three payments: two advance payments in March and April of 1983 and one final payment in February 1984 when its tax return was due.

During AMP's 1981 and 1982 taxable years, it received dividends from AMP Brasil and reported the dividends on its 1981 and 1982 United States income tax

returns. AMP claimed a foreign tax credit under Internal Revenue Code (I.R.C.) §§ 901 and 902[2] for the deemed paid Brazilian taxes attributable to the 1981 and 1982 dividends received from AMP Brasil. The deemed paid credits were calculated using AMP Brasil's accrued cruzeiro tax liabilities for TYE 1982 and TYE 1983. Deemed paid foreign taxes were calculated, pursuant to I.R.C. § 902, in cruzeiros and translated into United States dollars using the spot exchange rates on the dates of the dividend payments.

In 1986, AMP filed amended 1981 and 1982 United States income tax returns to claim refunds for 1981 and 1982. On these amended returns, AMP recalculated the Brazilian deemed paid tax credits using the actual amount of cruzeiros that AMP Brasil had to pay to satisfy its Brazilian income tax liability under the ORTN indexing system. The amended returns reflected the increased foreign income taxes paid by AMP Brasil and a decrease in AMP Brasil's earning and profits for purposes of the I.R.C. § 902 formula. As in the original returns, the deemed paid taxes were calculated in cruzeiros and translated to U.S. dollars using the dividend payment date exchange rates. When the refund claims were rejected by the IRS, AMP filed a refund suit in the Court of Federal Claims.

In the Court of Federal Claims, AMP and the government filed cross-motions for summary judgment. The court granted the government's motion and entered judgment for the government. The issue presented, in the court's view, was:

> [w]hether to calculate the foreign tax (1) by looking to the value of AMP Brasil's tax liability in cruzeiros at the time it was set under Brazilian law ... and then subtracting this cruzeiro amount from the total number of cruzeiros AMP Brasil paid ... and treating the differ-

ence as an "additional payment" requiring a redetermination of liability, under I.R.C. § 905 ... or (2) by comparing [AMP Brasil's] tax liability in (inflation-adjusted) ORTN ... in which case there is no need for a redetermination, since the amount of ORTN ... *paid* (in cruzeiros at the index rate at the time of payment) is equal to the amount of ORTN ... *owed* (in cruzeiros at the index rate at the time liability is set)....

*AMP I*, 40 Fed.Cl. at 179–80.

The Court of Federal Claims concluded that "[b]ecause the ORTN-to-dollar rate is fairly constant ... and both the foreign tax liability and the amount of payment were determined in ORTN ... the value of the tax at the time it was paid must be calculated in ORTN, not cruzeiros." *See id.* at 179. In so holding, the court gave deference to Revenue Ruling 91–21, 1991 C.B. 112, in which the Commissioner ruled that "for purposes of I.R.C. § 902, the ORTN tax liability is the foreign income tax." The court found Revenue Ruling 91–21 to be persuasive because the court determined that the ORTN was the "functional currency" for Brazilian tax law and for commercial purposes. *See id.* at 180. The court's conclusion was based in part on I.R.S. Ann. 81–4, *see id.*, which defined "functional currency" as:

> [t]he primary currency of the economic environment in which the entity operates. It is presumed that an entity's functional currency would be the currency of the country in which the entity is located and the currency of the country in which the books of record are maintained. In some instances, however, a foreign entity's functional currency may not be the currency of the country where the entity is located even though that currency is used in the books of records [sic].

---

**2.** Unless otherwise indicated, citations to the Internal Revenue Code of 1954, as amended, (I.R.C.), codified at Title 26, United States Code, and to the Treasury Regulations (Treas.

Reg.), located in Title 26 of the Code of Federal Regulations, are to the provisions in effect during the years at issue.

I.R.S. Ann. 81–4 (1981) (citing Financial Accounting Standards Bd., *Foreign Currency Translation, Exposure Draft* ¶ 15 (Aug. 28, 1980)). The trial court also based its conclusion on the fact that the Brazilian economy made use of the ORTN as a monetary conversion system for income taxes, social security payments, capital markets, leases, expropriations, and labor costs. Thus, the court not only concluded that the ORTN was AMP Brasil's functional currency during the periods at issue, but also concluded that all of AMP Brasil's earnings, dividends, and taxes must be converted to dollars based on the ORTN value. *See AMP I*, 40 Fed.Cl. at 180.

The Court of Federal Claims rejected AMP's contention that a redetermination of foreign taxes paid was required under I.R.C. § 905(c). The court noted that a redetermination is required when there is a difference between the foreign tax "accrued" and the foreign tax "paid." *See id.* at 182. Because the tax liability was measured in ORTN at the time of accrual and ORTN at the time the installment payments were made after ORTN indexing was adopted, the court determined that there was no difference in the amount of taxes paid by AMP Brasil and the amount of taxes accrued. *See id.* For these reasons the court held that AMP was not entitled to a recalculation of its foreign tax credits because no redetermination of AMP Brasil's foreign taxes was necessary. This appeal followed.

## DISCUSSION

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). We review a grant of summary judgment by the Court of Federal Claims *de novo* to determine whether the summary judgment standard has been correctly applied. *See Winstar Corp. v. United States*, 64 F.3d 1531, 1539 (Fed.Cir.1995) (en banc), *aff'd* 518 U.S.

839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131 (Fed. Cir.1998).

### I.

AMP contends that it is entitled to a recalculation of the deemed paid taxes. It asserts that under I.R.C. § 902 the deemed paid taxes must be computed in cruzeiros because that is the currency of Brazil and the currency used by AMP Brasil in keeping its books and records. AMP argues that the Court of Federal Claims erred in finding the ORTN to be Brazil's functional currency, and in relying on Revenue Ruling 91–21. Finally, AMP claims that its earnings and profits must be reduced by the additional amount of cruzeiros paid in the taxable years to which the payments related.

The government argues that AMP is entitled to a foreign tax credit no greater than the Brazilian income tax accrued and paid by AMP Brasil, which is defined in terms of ORTNs. For purposes of calculating the deemed paid foreign tax credit, AMP must therefore use the ORTN tax liability. The government argues that no redetermination of AMP Brasil's income taxes is required for purposes of adjusting AMP's foreign tax credit because the ORTN tax liability accrued equaled the ORTN tax paid. Furthermore, the government contends that AMP Brasil's additional cruzeiro payments made to satisfy its tax liability should reduce earnings and profits in the year such payments were made.

### II.

■ We consider first whether AMP is entitled to additional foreign tax credits for 1981 and 1982 under I.R.C. §§ 901, 902, and 905 for the additional cruzeiro amounts that AMP Brasil paid to satisfy its accrued liability under the ORTN in-

dexing system. A tax credit is permissible under I.R.C. § 901 for foreign income taxes paid or accrued directly by a United States taxpayer, or deemed paid or accrued under I.R.C. § 902. Because AMP did not directly pay foreign income taxes to Brazil, but instead received dividends from its foreign subsidiary, AMP Brasil, which did pay foreign income tax, AMP is "deemed" to have paid the foreign income taxes. *See* I.R.C. § 902(a). AMP asserts that because its subsidiary had to pay additional cruzeiros to satisfy its foreign tax liability, beyond the amount of cruzeiros it had accrued as its liability, AMP is entitled to a recalculation of its "deemed paid" taxes, and thus is entitled to refunds based on the redetermination of foreign taxes pursuant to I.R.C. § 905.

A taxpayer's foreign tax credit, including its § 902 "deemed paid" taxes, shall be adjusted where there is a redetermination of foreign tax accrued or paid by a taxpayer, or by a subsidiary of a United States taxpayer. *See* I.R.C. § 905. Temporary Treasury Regulation § 1.905–3T(c)(2), which was applicable to the years here at issue, *see* Temp. Treas. Reg. § 1.905–5T(c) (1988), defines a foreign tax redetermination:

> A foreign tax redetermination includes . . .
>
> (2) [a] difference between the dollar value of the accrued foreign tax and the dollar value of the foreign tax actually paid attributable to differences in the *units of foreign currency paid* and the *units of foreign currency accrued;* . . .

Temp. Treas. Reg. § 1.905–3T(c)(2) (1988) (emphasis added).[3]

The Court of Federal Claims correctly determined that this regulation was applicable to AMP's taxable years at issue. The court erred, however, when it concluded that the temporary regulation had no effect in this case because there was no difference in the amount of taxes accrued and the amount paid. It reached this con-

clusion by viewing the ORTN as the "functional currency of Brazil." *See AMP I*, 40 Fed. Cl. at 183.

Temporary Treasury Regulation § 1.905–3T(c)(2) refers to "units of foreign currency paid" and "units of foreign currency accrued." Currency is defined as a "medium of exchange." *Webster's Ninth New Collegiate Dictionary* (1988). The parties stipulated that the cruzeiro was the medium of exchange used by AMP Brasil for all of its transactions, including payment of its Brazilian taxes, and that the cruzeiro was the currency of AMP Brasil's books and records. *See AMP I*, 40 Fed. Cl. at 173–76, 178–79. The parties also stipulated that the ORTN was used as an inflation index in Brazil. *Id.* at 173–74.

Moreover, the Brazilian Supreme Court in 1986 and 1987 specifically held that Brazil's national currency was the cruzeiro, not the ORTN. *See State of Sao Paulo v. Ricardo Fioram*, No. 114.328–2 (1987) (Braz.); *State of Sao Paulo v. Kataru Mishima and wife*, No. 114.036–4 (1987) (Braz.); *State of Sao Paulo v. CIRCET— Circuladores e Catalogoe em OFF–SET Ltda.*, No. 111.273–5 (1986) (Braz.). We should accord deference to the Brazilian Supreme Court's determinations. *See Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229 (Fed.Cir.1996) (citing *Hilton v. Guyot*, 159 U.S. 113, 202, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). While these decisions post-date the tax years at issue in this case, it is significant that the Brazilian judiciary, during inflationary times, still considered the cruzeiro to be the national currency.

■ Although the Court of Federal Claims placed considerable reliance on Revenue Ruling 91–21, we find it unpersuasive. This ruling was issued while AMP's refund claims were pending with the Internal Revenue Service (I.R.S.). A revenue ruling issued at a time when the I.R.S. is preparing to litigate is often self-serving and not generally entitled to defer-

---

3. Prior treasury regulations, *see* Treas. Reg. § 1.905–3(a) (1960), had a similar definition.

ence by the courts. *See Tandy Corp. v. Commissioner,* 92 T.C. 1165, 1170, 1989 WL 56149 (1989). This is especially true when the ruling cites no authority and is inconsistent with regulations and other pronouncements of the I.R.S. *See id.* at 1170–71.

Revenue Ruling 91–21 is a simplified fact pattern where all accumulated profits were distributed, resulting in all taxes paid by the subsidiary being deemed paid by the parent. No accumulated profits of other years were involved. In addition, Revenue Ruling 91–21 states, without supporting authority, that "for the purposes of section 902 of the Code, the ORTN tax liability is the foreign income tax." This statement, in light of the prospective litigation between AMP and the Commissioner, is self-serving.

It is also inconsistent with the definition of a foreign tax redetermination which is measured in the units of foreign currency paid and accrued. *See* Temp. Treas. Reg. § 1.905–3T(c)(2) (1988) and Treas. Reg. § 1.905–3(a) (1960). In this connection, the record is clear that the Brazilian taxes were always paid in cruzeiros, Brazil's currency. The Court of Federal Claims, despite finding that the ORTN was Brazil's "functional currency," recognized that AMP's monthly tax payments were, "as a matter of fact, necessarily made in the common currency, cruzeiros." *AMP I,* 40 Fed.Cl. 172, 175. We conclude that Revenue Ruling 91–21 is not entitled to deference.

Because Brazil was suffering from rampant inflation it sought to insulate its tax system, among other systems, from the effects of inflation. Taxpayers, however, were not so insulated. By the same token, the Internal Revenue Code was not drafted to cover hyperinflationary economies. Under the Code as it was written prior to the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (TRA 1986), unusual foreign tax credits were possible. The legislative history of TRA 1986, and its examples, show that the deemed paid tax credit can be overstated or understated depending on the direction of the currency fluctuation and the timing of the payment of the dividend and the payment of the foreign taxes. *See* H.R.Rep. No. 99–426, 463–64 (1986); S.R. 99–313, 448–49 (1986). The Court of Federal Claims recognized the possibility of disparate results under I.R.C. §§ 902 and 905 depending on whether a foreign government's economy was suffering from inflation or deflation. *See AMP I,* 40 Fed.Cl. 172, 182–83.

When Congress amended the tax laws in 1986, it was aware of the anomalies, including the potential windfalls that resulted when foreign economies were subject to exchange rate fluctuations, particularly hyperinflationary economies. The legislative history of TRA 1986 shows that Congress intended to revise the Internal Revenue Code to correct problems in applying the foreign tax credit arising because of inflationary conditions in foreign countries. Under the amended law, foreign subsidiaries operating in hyperinflationary economies must use the United States dollar as their functional currency. *See* I.R.C. §§ 986 and 985(b)(3) (1986); Treas. Reg. § 1.985–1(b)(2) (1989). These changes, however, were prospective only in nature, and thus did not apply to pre–1987 taxable years.

Because the amendments to the Internal Revenue Code, including the concept of "functional currency," were prospective, we conclude that the Court of Federal Claims erred in holding that the ORTN should be considered Brazil's "functional currency" for the years here at issue. We therefore reverse the holding of the Court of Federal Claims.

## III.

■ The question has also been raised as to whether the additional cruzeiro tax payments made by AMP Brasil should reduce its earnings and profits for the taxable year to which they relate, or for the year in which the payments were made.

AMP argues that its earnings and profits for TYE 1981 and TYE 1982 must be reduced.

The government contends that the additional payments should reduce earnings and profits only in the years when they were actually made. It argues that these payments were not taxes, but "monetary correction payments" that reduced AMP Brasil's capacity to pay dividends.

The Court of Federal Claims did not adopt the government's view, stating that:

> [u]nder I.R.C. § 902(a), the paid foreign tax, a portion of which becomes the foreign tax credit, is the same ("such") paid foreign tax that is deducted from the foreign subsidiary's earnings and profits to determine the correct proportion. See also Treas. Reg. § 1.902–1(b)(2) ("such taxes"). [The government] would calculate the first "income . . . tax [ ]" by multiplying the foreign subsidiary's ORTN-denominated liability by the ORTN-to-cruzeiro index for the month of the dividend, and the second "income . . . tax [ ]" by multiplying the foreign subsidiary's ORTN-denominated liability by the ORTN-to-cruzeiro index for the month after the foreign subsidiary's taxable year closed. However, the plain language of I.R.C. § 902(a) forecloses [the government's] approach.

*AMP I,* 40 Fed.Cl. at 184. The court noted that the government's approach would depart from the general rule that foreign taxes reduce earnings and profits for the year to which the taxes relate, even if they are paid in a different year. *See id.* The court also departed from the position urged by AMP, and apparently would have AMP's earnings and profits recalculated in ORTNs which would necessitate no adjustment. On appeal, the government does not support the approach taken by the Court of Federal Claims.

■ The law is clear that the earnings and profits of a corporation for a particular taxable year must be adjusted to take into account the actual net amount of taxes paid with respect to such earnings, regardless of the taxable year in which either a payment or refund occurs. *See Champion Int'l Corp. v. Commissioner,* 81 T.C. 424, 1983 WL 14872 (1983); *H.H. Robertson Co. v. Commissioner,* 59 T.C. 53, 1972 WL 2523 (1972); *Deutsch v. Commissioner,* 38 T.C. 118, 1962 WL 1064 (1962); *Stern Bros. & Co. v. Commissioner,* 16 T.C. 295, 323, 1951 WL 86 (1951); *Carter, Rice & Co. v. Commissioner,* 28 B.T.A. 687 (1933).

At oral argument, the government conceded that the additional payments made by AMP Brasil were, in fact, payments of taxes, not "monetary correction payments" as it argued initially. Moreover, we have determined that the additional cruzeiros paid by AMP Brasil were tax payments in satisfaction of its Brazilian tax liability. Thus, AMP Brasil's earnings and profits for the years at issue must be reduced by the additional cruzeiro taxes it paid pursuant to its ORTN-indexed tax liability.

## CONCLUSION

We conclude that AMP is entitled to additional foreign tax credits for 1981 and 1982 as a result of the additional income tax payments made by AMP Brasil. AMP Brasil's earnings and profits for TYE 1982 and TYE 1983 must be reduced by the additional tax payments made. The judgment of the Court of Federal Claims is therefore

*REVERSED.*